2 0 1 9 dash 1 0 0 7 Peterson Industries versus the US. The members all will participate in conclusion break. Speaker 3 Good morning Your Honour, as Judge Moore indicated, my name is James Gilson and I'm pleased to represent the appealant Peterson Industrial Properties in this matter. We are asking the court to reverse the granting of summary judgment to the government and to end the denial of my client's motion. At issue in this case, it's a Tuckrack case, contract at issue is a deed. Judge O'Connor Well, why isn't the contract unambiguous? It says certain rail lines and it says as shown in Exhibit K and there really isn't an argument that the southern access lines are shown in Exhibit K. So what's, I guess, what's the problem here? The contract doesn't seem ambiguous to me. So what is it, is it Exhibit K that you think is ambiguous? What do you think the problem is? Judge O'Connor Yes, well the contract, as Your Honour indicated, says that we would get, my client would get an easement to the rail classification yard and certain rail lines and as shown on Exhibit K. Exhibit K, it says Appendix 124, it is just a map with lines on it, it doesn't identify any certain rail lines, it's just a map that's unmarked, designated in any way. Judge O'Connor But you haven't alleged that any of this map includes the southern access lines, have you? Judge O'Connor No, this map, we admit, this map does not show the southern access line, but the map as it is doesn't identify what the other rail lines were either. And I think... Judge O'Connor It doesn't identify them, but I thought there was a line in this case and I didn't know it to be in dispute, so tell me if I'm wrong, that this map does include two particular other rail lines, western and I can't remember the third. I was trying to look for that. Judge O'Connor The main line, yes. They extend from the classification yard. Judge O'Connor Yes, the main line and the western Pacific line were two lines that the government, a witness, Mr. Tom Turner identified in his relied or allowed the government's parole evidence to say that those other lines are the western line and the main line. Judge O'Connor Are you disputing that this picture shows the western and the main line? Judge O'Connor Yes, we are. We may clarify, the western Pacific line and the main line are included within the rail classification yard, but those lines extend beyond that yard into what we believe was a missing page two on Exhibit K into those southern access lines. Judge O'Connor So wait, so just so I understand, does the main line and the western line sort of change names and become the southern access line or is it a whole different line? Judge O'Connor It merges into what we've called the southern access line. That was a term that we coined during the lawsuit to describe those lines that are the in and outbound lines and the combat lines. Judge O'Connor None of which are shown in this picture though? Judge O'Connor No. They are not. But what's important is that this picture doesn't show the western line either. Judge O'Connor Your theory is that there's a page two at Exhibit K that wasn't included with the deed. Judge O'Connor Yes. And that page two clearly shows what these certain rail lines were. Judge O'Connor Does that page two identify and annotate and say here's the southern access line? Judge O'Connor It identifies in bold those lines. And that page two was page two of the memorandum of Exhibit A to the memorandum of agreement that was entered into one week after this deed was entered into. Judge O'Connor Is that page 185 of the appendix? Am I looking at the right thing? Judge O'Connor I think it's page 131 of the appendix. It may be in another place as well. Page 131 of the appendix. Judge O'Connor So you're saying there was basically a mistake? Judge O'Connor Yes. What we're saying is that when they referred to Exhibit K Judge O'Connor But that, I don't know, I mean that's a different theory is it not than whether this is ambiguous? Judge O'Connor Well I think you get to it because when it refers to and certain rail lines, when you look at Exhibit K, there's no certain rail lines that are identified. It's just a bunch of different lines there. And so it renders the reference in the deed A3, paragraph A3C and Exhibit K inherently ambiguous because it refers to certain rail lines that aren't identified. And so you can get into it. Judge O'Connor They're not identified, but if a skilled artisan or a skilled person reading this or basically anyone reading this would know, oh, because I mean they're going for, as they clearly specified, the railroad classification yard. Well, there's got to be a line coming to and from it, right? Because people aren't putting the trucks on their back and carrying them over. So there's got to be lines coming to and from it. So those are the lines that are covered.  Judge O'Connor Well, that's our point that the government's interpretation leads to an absurd result because what good is having those rail lines and having an easement just to run back and forth within the industrial park? There has to be a manner of egress and ingress and that's what exactly what these southern access lines do. That's what all the parole evidence clearly showed, that it was intended that they would have an easement also to these southern access lines. Judge Goldberg I guess, isn't there a first inquiry, first line inquiry, and that's to try to figure out whether the deed itself is somehow ambiguous? Judge O'Connor Yes. Judge Goldberg And then only after you succeed in establishing that there's some kind of ambiguity can we then start consulting extrinsic evidence to try to figure out what might have been the intent of the parties. And so, as I understand it, that's the real problem you have is that if you look at the deed along with Exhibit K, it looks unambiguous as to what it covers and doesn't cover. Judge O'Connor When you look at Exhibit K, you cannot tell what these certain rail lines are. It's not. It's Mark. Judge Wolski, who was the initial judge assigned to this case, he says, wouldn't we need some clearly, Mark? I can't tell from just looking at Exhibit K what is meant. There must be some extrinsic evidence to help interpret this. Otherwise, it's ambiguous. Judge Goldberg Well, at most, that's to interpret the understanding of that one figure that is Exhibit K. It's not to introduce possible other pages and then go figure out what those other non-included pages are. Once you've determined that Exhibit K is ambiguous because it doesn't clearly identify the other rail lines, then you're allowed to look at the parole evidence and you're not limited just to Exhibit K. But what is... Judge O'Connor I guess that's the question. How far do you get to run in looking around for any possible other attachment that you might want to include into the deed? Judge Goldberg We're not asking the court to go very far afield. The very next day after this deed was recorded, on January 7th, there was a letter that was sent from the Army to the depot saying that we're going to give you an easement to the classification yard as well as to certain rail lines and attached to that... And one week later, they entered into this memorandum of agreement that had an Exhibit A that had those other rail lines clearly identified. And that's this Exhibit Appendix 141 where it has those other rail lines clearly identified in bold. That's on the original. So without... The government's interpretation leads to an unreasonable result. And on its face, we submit that this Exhibit K was inherently ambiguous and the court should have allowed us to be able to put on this extrinsic evidence because it allowed the government to put on its extrinsic evidence about these other lines referred to the main line and the western Pacific line. And so the court was unfair in that regard and we think that it was error. Let's submit also, Your Honors, that there was additional evidence that with regard to that this was ambiguous. There was a license agreement that was entered into in the year 2000 and 2008 with respect to other successors to the original property. And those exhibits to those licenses also clearly identified these southern access lines. I'd like to also address finally the no-cost argument, Your Honors. Section 18 of the deed provides that all deeds and easements, all easements contemplated would be granted at no cost by the grantor to the grantee. And the government has interpreted this to say that does not apply to the successors and the signs. We submit that that construction is unreasonable because nowhere in the deed is there mentioned that their costs would be assessed to the RDA or anyone else. And nowhere in the deed is there a specific reservation of rights expressly stating that the RDA transferee would have to pay for the easements. This interpretation is contrary to the BRAC law that assigned this Tooele base to the government of Tooele and that was for the very purpose of economic development. The first sentence in the easement at issue here in section A3 needs to be read as a whole in terms of both sentences in section A3A. The first sentence it says the railroad classification yard and certain rail lines located on armory retained property as shown on exhibit A are available for joint use with the grantor by the grantee and his successors and his signs. And then it goes on in the second sentence to say that a non-exclusive easement for use of such facilities will be under a separate agreement. Clearly by the first sentence of the key paragraph at issue there was a present investment of joint use rights and the easement was merely the mechanism by which those joint use rights would be vested. Doesn't the deed define grantee as the redevelopment agency? It doesn't say, it doesn't define grantee to include successors. Yes, I think that's right. I mean, clearly the RDA was the only grantee. Do you want us to read that into the deed? Well, any easement that's granted to a grantee, it becomes a vested right. And so when the grantee then assigns it, they assign what they have. It would then be the grantee's right to assign. And my client... Hopefully, but in this case it seems that perhaps another explanation is that the government was reserving the right to charge the potential grantees for the access to the easement. Well, that's what the government has argued, but I think that that interpretation assumes too much. Just by the fact that they didn't say and successors and signs every time they referred to the grantee doesn't mean that they... That the omission was intended to mean that we're going to in fact charge successors and the signs. These easements run with the land and they're presumed to be able to be freely alienable from one property owner to the other. And a subsequent grantee of an easement shouldn't have to pay royalties or a fee to the original grantee unless the original grantor specifically reserved the right to say, you know, this easement is just limited just to you. And any subsequent person is going to have to pay me a royalty or pay me a license fee. That is not expressly stated anywhere in this deed. But the deed does express grantee and the successors in different parts of the deed. But in the provision that you're concerned about, it doesn't go on... It just says grantee. It doesn't say any successors. Well, it does in the no cost... that the parties understood, you know, the role of the successors to the grantee, then they probably would not have stated this the way that they did. There is many provisions in the deed where they didn't also say any successors and the signs. I think there's just as a, you know, extra language that's required. So you're not concerned about those sections. You're concerned about this one. In this one, your magic words are missing. Well, in A3, though, they weren't missing. They said that the joint use rights in regard to these facilities, the class yard, and the other certain rail lines are available currently now for joint use by the RDA and its successors and its signs. So it was a vested right in the grantee and its successors. Mr. Gilson, you've used almost all your rebuttal time. Yeah, I better sit down. Kushner, am I saying that right? You are. Thank you, Your Honor. Please proceed. May it please the Court. This Court should apply its longstanding rules of contract interpretation and enforce the unambiguous terms of the deed in question. The deed plainly promises a future easement at no cost to the original grantee only. The deed begins by defining the term grantee as the redevelopment agency of Twillie City unless otherwise specifically provided herein. This definition alone means that whenever the deed refers to the grantee without any additions or modifications, that reference is to the RDA and not any other entities or individuals. Well, what about the fact that, I mean, that certain rail lines isn't specific, but then you look at Exhibit K and those rail lines aren't demarcated on Exhibit K either. Right. And that goes to Appellant's argument that the Court needed extrinsic evidence to figure out what these other lines are called. And it is correct that Exhibit K does not identify the western Pacific line and the main line by name. We submit to the Court that that's not necessary. The Court can just as well call them the A line and the B line or the left line and the right line. The only thing that matters is that these two lines are depicted on Exhibit K and the southern access lines, which Appellants are trying to incorporate into the definition of certain rail lines, they undisputedly do not appear on Exhibit K. How do we know where it stops? And what I mean by that is the certain rail lines shown in Exhibit K, how do we know where the western and the main line cease to be the western and the main line? Where does it cut off? Certainly I don't think you're alleging that the easement stops at the edge of the picture, right? You're saying they have an easement on that whole line, whatever the whole line is, correct? Just to clarify, Your Honor, there is no easement. There is joint use rights that were granted pursuant to the deed. Okay, thank you, but whatever. The rights to use don't stop at the border of my picture, do they? We believe that it does, Your Honor, absolutely. You believe it does. You believe even to the extent that they have the right to use the western and the main line, it is only as far as this picture shows and not an inch further? We believe so. Exhibit K is clear on its face. I didn't understand that. I thought that the government, I guess I thought your argument was that they have the western and the main line, which are the lines that originate here in this rail yard, but they can't go beyond those two lines. Well, so the way it's worked for almost 20 years is the southern access lines provide access to the rail classification yard as well as the main line and western Pacific line. Different successors in interest to the RDA, including the Peterson Group, have had a contract with the Army in which they pay Army personnel to move their rail cars, the appellants' rail cars, through the southern access lines and into the rail classification yard. That's the way it worked with every single successor in interest to the RDA, and that's the way it's worked with the Peterson Group. So the appellants can use the main line and western Pacific line beyond Exhibit K, but to do that they have to use Army services. Now, I think it's undisputed here that the deed expressly limits the phrase certain rail lines to Exhibit K, and it's also undisputed that the southern access lines are not on Exhibit K. Together, those two facts mean that they cannot get either a joint use right or an easement to the southern access lines pursuant to the deed. When it says certain rail lines in the deed as shown on Exhibit K, you think I should interpret it to only the portion of the line that's shown on Exhibit K? I'm just still a little perplexed by this argument. I thought that it included everything that would— I guess I'm starting to think maybe there's ambiguity here after all, and I didn't come in thinking that. But I thought when I read certain rail lines, it meant those lines, not just the portion of those lines shown on Exhibit K, because it doesn't say the portion shown on Exhibit K. So I guess I'm confused. So just to clarify one thing, the main line and the western Pacific line, once you go beyond Exhibit K, they turned into other lines by other names. They don't continue past Exhibit K very much if they do at all. Really, the main line and western Pacific line are shown on Exhibit K. It's the vast majority of those lines, and possibly those entire lines are shown on Exhibit K. In fact, I believe that the southern access lines connect to the main line and western Pacific line in a portion of the area that is not shown on Exhibit K. But again, Your Honor, just to clarify the lack of ambiguity, Exhibit K is what it is. Whether the court calls it main line and western Pacific line or something else, the southern access lines, which appellants are trying to get access to, they are not depicted on Exhibit K. And therefore, the phrase certain rail lines cannot possibly refer to those lines. I got it. Now, the other issue is whether the Peterson Group, as a successor in interest to the original grantee, whether they get an easement pursuant to Section A3C of the deed. And there I explained that the definition of the term grantee is dispositive of this issue. But the deed also goes on to refer to the grantee in some portions and the grantee, and its successors and assigns in other portions. And the expressio unius canon of contract interpretation allows us to surmise that the original parties to the deed intended for some portions to apply to the RDA only and other portions apply to successors in interest as well. If there are no further questions, we ask that the court affirm the trial court's decision below. Thank you very much. Mr. Gilson, you have a little bit of time left. Thank you, Your Honor. I think it is obvious that when you look at Exhibit K, it's unclear what these certain rail lines are. And the government, through its parole evidence, has tried to explain what they think those certain rail lines are. But under the government's interpretation, the easement stops at the end of that map. And that leads to what we've argued is not a tenable, rational result because what good is railroad lines... You're landlocked. You're landlocked. And so we have an easement by necessity. In essence, our interpretation is the only reasonable one, and that's supported by all the parole evidence. The government's own negotiator, Dorinda Benson Ware, acknowledged that when she looked at Exhibit A to the MOA that was entered into that same month, she says, yes, that is the lines that was contemplated by the deed. She admitted that in her deposition. The letter that was issued the day after, on January 7th, acknowledged that. So we're just asking the court to... Is there some reason why the second page wasn't part of the deed, the alleged second page? We think it was a Scribner's error. It was a simple mistake because without it, we're landlocked. Well, I understand that, but, I mean, maybe this type of mistake, that's a different doctrine than whether the deed is ambiguous or not. And that's the question that we're faced with today. Well, I think you can get there, Your Honor, by looking at Exhibit K on itself as ambiguous, that allows you to get to this extrinsic evidence immediately. There's no dispute that Exhibit K doesn't illustrate any portion of the Southern Access Line. Is that right? That's true. But Exhibit K on itself is ambiguous. In 2014, they did grant an easement to my client, recognizing that we had the rights to the classification yard. They simply didn't extend it to the Southern Access Line. It's about the money. The Army wants to charge for us to use it when we say we bought it as a successor. I assume my time is almost up. It is, Mr. Gilson. Thank you very much. Thank you very much. I thank both counsel. The case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m.